1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JENNIFER ERIN PARKS,                     No.  2:13-cv-547-EFB

12                  Plaintiff,

13          v.                                ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,

15

16                  Defendant.

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her applications for a period of disability and Disability Insurance

20   Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the

21   Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the

22   reasons discussed below, the court denies plaintiff's motion and grants the Commissioner's

23   motion.

24   I.     BACKGROUND

25          Plaintiff filed applications for a period of disability, DIB, and SSI on March 23, 2010,

26   alleging that she had been disabled since October 20, 2008.  Administrative Record ("AR") 186-

27   193.  Plaintiff's applications were denied initially and upon reconsideration.  *Id.* at 105-109, 115-

28   120.  On January 20, 2012, a hearing was held before administrative law judge ("ALJ") K. Kwon.

                                             1

*Id.* at 52-99.  Plaintiff was represented by counsel at the hearing, at which she, her mother, and a vocational expert ("VE") testified.  *Id.*

On February 21, 2012, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1]  *Id.* at 26-37.  The ALJ made the following specific findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since September 12, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

\* \* \*

3.  The claimant has the following severe impairments: bipolar disorder and obesity (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

\* \* \*

5.  The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no more than occasional interaction with the general public.

\* \* \*

6.  The claimant is capable of performing past relevant work as a data entry clerk/clerical assistant.  These jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

\* \* \*

7.  The claimant is not disabled as defined in the Social Security Act at any time through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 28-37.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 20-21, and on January 22, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-6.

II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

3

1    The findings of the Commissioner as to any fact, if supported by substantial evidence, are

2    conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

3    more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

4    Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a

5    conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.

6    N.L.R.B.*, 305 U.S. 197, 229 (1938)).

7    "The ALJ is responsible for determining credibility, resolving conflicts in medical

8    testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

9    2001) (citations omitted). "Where the evidence is susceptible to more than one rational

10   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

11   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

12   III.    ANALYSIS

13   Plaintiff argues that the ALJ erred by: (1) failing to find that her migraine headaches and

14   anxiety disorder were severe impairments at step-two, (2) rejecting the opinion of her treating

15   physician, (3) failing to give sufficient reasons for discrediting her subjective complaints, (4)

16   rejecting third-party testimony, (5) assessing her residual functional capacity ("RFC"), and (6)

17   failing to pose a hypothetical to the VE that included all of her functional limitations. ECF No.

18   15 at 2.

19       A.    Any Error at the Second Step Was Harmless

20   Plaintiff argues that the ALJ erred at the second step of the sequential evaluation process

21   by failing to find that her migraine headaches and anxiety disorder were severe impairments.

22   ECF No. 15 at 6-17.

23   "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

24   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants

25   whose medical impairment is so slight that it is unlikely they would be disabled even if age,

26   education, and experience were taken into account. *Yuckert*, 482 U.S. at 153. At step two of the

27   sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe"

28   within the meaning of 20 C.F.R. § 404.1520(c). A severe impairment is one that "significantly

4

1    limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R.

2    § 404.1520(c).  An ALJ must consider all of the evidence at step two to determine whether a

3    medically determinable impairment significantly limits the claimant's ability to perform basic

4    work activities.  *Id*. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987).  "An impairment

5    or combination of impairments may be found 'not severe only if the evidence establishes a slight

6    abnormality that has no more than a minimal effect on an individual's ability to work.'"  *Webb v.*

7    *Barnhart*, 433 F.3d 683, 686–87 (9th Cir.2005) (quoting Social Security Ruling ("SSR") 96–3p

8    (1996)).  Step two is "a de minimis screening device [used] to dispose of groundless claims" and

9    the ALJ's finding must be "clearly established by medical evidence."  *Id*. at 687 (citations and

10   quotation marks omitted and modification in original).

11        At step two the ALJ found that plaintiff's severe impairments included bipolar disorder

12   and obesity.  AR 29.  In her step-two discussion, the ALJ also observed that medical evidence

13   establishes that plaintiff suffers from migraine headaches but found that plaintiff's headaches

14   have been conservatively treated with medication.  *Id*.  The evidence shows that Dr. DeNapoli,

15   plaintiff's treating physician, has treated plaintiff for chronic migraines with prescription

16   medication since August 2010.  *See id*. at 371-376; 428-56.  As the ALJ points out, Dr.

17   DeNapoli's notes reflect minimal, if any, complaints of persistent migraines, and tend to show

18   improvement with medication.  *See id*. at 371-376; 428-456.  Furthermore, as observed by the

19   ALJ, Dr. DeNapoli opined that plaintiff had no "significant physical impairments[.]"  AR at 444.

20        Plaintiff argues, however, that ALJ's finding is "in stark contrast to the plaintiff's

21   testimony and that of her mother."  ECF No. 15 at 7.  The ALJ specifically considered plaintiff's

22   subjective complaints regarding migraine headaches, as well as statements from her mother, Mary

23   Hill.  AR 29.  But the ALJ found their statements were not credible.  As discussed in further

24   detail below, this credibility finding is supported by substantial evidence.  Accordingly, the ALJ

25   properly found that plaintiff's headaches lacked the requisite severity required at the step-two

26   screening inquiry.

27        As for anxiety, the ALJ's step-two discussion did not specifically address why she found

28   that plaintiff did not suffer from a severe anxiety disorder.  Medical evidence in the record shows

1    that on August 6, 2010, plaintiff reported to her treating psychiatrist, Dr. Jocelyn Aquino-Cruz,

2    that she had "anxiety when going outside and being around people." *See id*. at 390.  Dr. Aquino-

3    Cruz listed anxiety as one of plaintiff's conditions and prescribed Propranolog.  *Id*.  On

4    September 21, 2010 and October 19, 2010, Dr. Aquino-Cruz's noted that plaintiff again reported

5    having "anxiety when going outside and being around people."  *Id*. at 382, 386.  Treatment notes

6    from a November 1, 2010 exam did not indicate that plaintiff reported anxiety, but included

7    anxiety as one of plaintiff's conditions.  *Id*. at 380.  However, starting in December 3, 2010, Dr.

8    Aquino-Cruz stopped listing anxiety as one of plaintiff's impairments, *id*. at 487, and subsequent

9    treatment notes rarely reference any complaints of anxiety.  *See id*. at 457-491.

10           Thus, there is some evidence in the record that plaintiff, at the very least, used to suffer

11   from some level of anxiety.  However, it is unclear why the ALJ did not find this particular

12   impairment to be severe.  Nevertheless, assuming that plaintiff's anxiety disorder was severe, the

13   ALJ's contrary finding is, at most, harmless.  Finding the anxiety order "severe" for screening

14   purposes at step-two simply means that it must be evaluated further in the remainder of the

15   sequential evaluation.  The ALJ specifically considered plaintiff's anxiety in assessing plaintiff's

16   RFC at step four.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless an ALJ's

17   failure to list certain impairment at step two where ALJ fully evaluated the impairment at step

18   four); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Smolen*, 80 F.3d at

19   1290 (if one severe impairment exists, all medically determinable impairments must be

20   considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523); *Burch

21   v. Barnhart*, 400 F.3d 676, 682–82 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe

22   at step two was harmless error where it was considered in determining claimant's RFC).

23           In assessing plaintiff's RFC, the ALJ specifically discussed medical records from Dr.

24   Aquino-Cruz that documented plaintiff's complaints of anxiety.  The ALJ noted that Dr. Aquino-

25   Cruz was treating plaintiff monthly for complaints of anxiety and that Dr. Aquino-Cruz had noted

26   anxious moods.  AR 32-33.  Because the ALJ considered plaintiff's anxiety in assessing her RFC,

27   any failure to find this impairment severe at step two was, at most, harmless.

28   /////

B. <u>The ALJ Properly Rejected the Opinion from Plaintiff's Treating Physician</u>

Plaintiff contends that the ALJ failed to give sufficient reasons for rejecting the opinion of her treating physician, Dr. Aquino-Cruz.  ECF No. 15 at 12-15.  To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  *Id.*, at 834.  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen*, 80 F.3d at 1295.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  *Id.* at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.,* supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Aquino-Cruz completed a Mental Residual Functional Capacity Assessment.  AR 420-422.  Dr. Acquino-Cruz opined that plaintiff had moderate limitations in understanding, remembering, and carrying out detailed instruction; working with co-workers; remembering locations and work-like procedures; and accepting instructions and criticism from supervisors.  *Id*. at 420-421.  She also opined that plaintiff had between moderate to marked limitations in her ability to maintain concentration and complete a normal work schedule.  *Id*.  Furthermore, she opined that plaintiff had between no limitations and moderate limitations in her ability to perform activities within a schedule, make simple decisions, interact with the general public, respond to

1  changes, be aware of normal hazards, and in her ability to set realistic goals and make

2  independent plans.  *Id.*

3       The record also contains an opinion from Dr. Haroun, a non-examining physician.  AR

4  341-354.  Dr. Haroun found that plaintiff had moderate limitations in responding to changes,

5  interacting with the public, completing a work schedule, and maintaining concentration.  *Id.* at

6  353-354.  He otherwise found that plaintiff was not significantly limited.  *Id.*  Dr. Haroun's

7  opinion was subsequently affirmed by non-examining physician Dr. Loomis.  *Id.* at 398.

8       The ALJ found that plaintiff retained the functional capacity to perform the full range of

9  work at all exertional levels except that she is limited to no more than occasional contact with the

10  general public.  AR 31.  In reaching this decision, the ALJ gave reduced weight to Dr. Aquino-

11  Cruz's opinion, but gave significant weight to the opinions from Drs. Haroun and Loomis, with

12  exception to their opinion that plaintiff was limited to simple, repetitive tasks.  *Id.* at 33-34.

13       The ALJ provided several reasons for giving reduced weight to Dr. Aquino-Cruz's

14  opinion.  First, the ALJ found that Dr. Aquino-Cruz's contemporaneous treatment records were

15  not consistent with her opinion.  *Id.* at 33.  Inconsistency in a doctor's opinions, observations, and

16  clinical notes "is a clear and convincing reason for not relying on the doctor's opinion" regarding

17  the claimant's abilities or limitations.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005);

18  *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

19       The ALJ observed that Dr. Aquino-Cruz's progress notes indicated good responses to

20  medication therapy.  *See, i.e.*, AR 483.  In a January 25, 2011 progress note, Dr. Aquino-Cruz

21  reported that plaintiff was "feeling better with med[ication] adjustments[.]"  *Id.*  On February 22,

22  2011, Dr. Aquino-Cruz remarked that plaintiff's medication was helping her with her crying

23  spells.  *Id.* at 481.  Furthermore, Dr. Aquino-Cruz's treatment notes continually report that

24  plaintiff's condition was improving.  *See, i.e., id.* at 476 (less crying spells and less tiredness), 468

25  (less mood swings and irritability), 466 (no frank mania/psychotic symptoms).

26       The ALJ also commented that the "objective mental status examinations have been within

27  normal limits, with good eye contact, no involuntary or restless movement, speech of normal rate,

28  rhythm and tone, mood noted to be mildly depressed and anxious, affect appropriate, thought

1   process coherent and goal directed, no tangential or circumstantial speech, no loosening of

2   association, . . . clear sensorium, and oriented to place time and person, fair concentration, intact

3   for immediate, recent and remote memory, average intelligence, fair abstract and reasoning,

4   insight, judgment and impulse control." *Id*. at 33; *see id*. at 382, 386, 390, 393, 458, 460, 464,

5   466, 468, 470, 473, 476, 481, 483, 487. The inconsistency between Dr. Aquino-Cruz's own

6   objective findings and her opinion was a reasonable basis for discounting the opinion.

7         The ALJ also found that Dr. Aquino-Cruz's opinion was inconsistent with plaintiff's

8   reported daily activities. As the ALJ observed, plaintiff reported that she maintained regular

9   attendance with school, worked part time, continued to search regularly for a job, and is

10  independent in her activities. *Id*. at 33, 61-65. The ALJ specifically found that these activities are

11  inconsistent with the opinion that plaintiff has moderate to marked limitations in her ability to

12  maintain concentration and keep an appropriate schedule. Accordingly, the ALJ properly relied

13  on plaintiff's activities in giving reduced weight to Dr. Aquino-Cruz's opinion. *See Morgan v.*

14  *Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601–602 (9th Cir. 1999) (an ALJ may reject a treating

15  opinion that is inconsistent with other evidence in the record, including plaintiff's reported daily

16  activities).

17        Accordingly, the ALJ provided specific and legitimate reasons for rejecting Dr. Aquino-

18  Cruz's opinion.

19        C.  The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's

20             Subjective Complaints

21        Plaintiff also argues that the ALJ erred in evaluating her credibility. ECF No. 15 at 11-12.

22  In evaluating whether subjective complaints are credible, the ALJ should first consider objective

23  medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th

24  Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ then may

25  consider the nature of the symptoms alleged, including aggravating factors, medication, treatment

26  and functional restrictions. *See id*. at 345–47. The ALJ also may consider: (1) the applicant's

27  reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2)

28  unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

1   of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records,

2   physician, and third party testimony about nature; severity; and effect of symptoms, and

3   inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*,

4   119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating

5   medical problem may be a valid consideration by the ALJ in determining whether the alleged

6   associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44

7   F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see*

8   *Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir.1989), which cannot substitute for

9   medical diagnosis, *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir.1990). "Without

10  affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for

11  rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc.*

12  *Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

13       Plaintiff testified that she is unable to work because she gets irritated and anxious around

14  people. AR 66. She stated that while she was working at a car auction people coming up to her

15  would distract her and give her little panic attacks. *Id*. at 72. She testified that her supervisor

16  would move her into the office to answer calls when she was too stressed by being around other

17  people. *Id*. at 73. Plaintiff also stated that she had problems focusing and an inability to control

18  her moods. *Id*. at 285. She reported memory problems, sleep disturbance, difficulty with mood,

19  loss of energy, diminished attention span, and intolerance for stress. *Id*. at 260-261.

20       The ALJ provided several reasons for why she found that plaintiff's allegations regarding

21  her functional capacity were not fully credible. First, the ALJ observed that plaintiff has been

22  prescribed medication which has generally shown improvement. *Id*. at 35. "Impairments that can

23  be controlled effectively with medication are not disabling for the purpose of determining

24  eligibility for" social security benefits. *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006

25  (9th Cir. 2006). While plaintiff's medication did not alleviate all symptoms, as discussed above,

26  medication therapy resulted in improvement in plaintiff's mental conditions and her ability to

27  function. *See id*. at 462-490.

28  /////

The ALJ also found that plaintiff's allegations were inconsistent with her daily activities. AR 35. An ALJ may consider activities of daily living in assessing a plaintiff's credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making a specific findings related to those activities." *Id*. The ALJ properly observed that plaintiff engaged in numerous activities manifesting functional capabilities consistent with those required in the workplace and with the ALJ's RFC determination. The evidence shows that plaintiff is goal oriented and continues to attend school, where she spends about 13 hours a week on campus. AR 62-65. Attending school regularly requires, at the very least, plaintiff to interact with her classmates and her professors at a superficial level. Furthermore, she occasionally works a job that requires her to regularly interact with people whether it be by phone or in person. *Id*. at 70-73. As the ALJ pointed out, despite working the job infrequently, and being provided special accommodations to limit her interaction with people, her willingness to accept the job demonstrates that plaintiff can be around people occasionally as assessed by the ALJ in plaintiff's RFC. *Id*. at 35.

The ALJ also observed that plaintiff's testimony was inconsistent with other evidence in the record. The ALJ observed that plaintiff and her mother described social isolation, but the evidence showed that plaintiff had a boyfriend, attended school, and received help from friends when she lost her job as a pharmacy technician. *Id*. at 35. These interactions with people are inconsistent with the testimony that she is socially isolated. Furthermore, plaintiff spent 2-3 hours a day on the computer applying for jobs, demonstrating her ability to concentrate adequately. *Id*. at 60-61.

Lastly, the ALJ observed that plaintiff amended her disability onset date to September 12, 2008, which "coincides with the date she was evaluated by Dr. Silver because she was not doing well and had lost her job and automobile." *Id*. at 35. The record reflects that plaintiff lost her job as a pharmacy technician in July of 2008, three months prior to her alleged onset date. *Id*. at 232. However, as the ALJ observed, plaintiff did not lose her job due to any medical disorder. Instead, plaintiff lost her job after she forged a drug prescription. *Id*. at 61-62. The ALJ also noted that

1  plaintiff has shown that she believes that she is capable of work, but has expressed frustration that

2  she cannot obtain work due to a criminal conviction.  *Id.* at 36.  As found by the ALJ, this

3  evidence suggests that plaintiff's inability to work is due to factors other than her alleged medical

4  impairments.  The reason for plaintiff's unemployment was a proper consideration in assessing

5  plaintiff's testimony.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding that

6  the ALJ properly consider, among other things, the reason plaintiff left his job in assessing the

7  plaintiff's credibility).

8       Accordingly, the ALJ gave clear and convincing reasons for discrediting plaintiff's

9  subjective statements.

10       D.  The ALJ Properly Discounted Ms. Hill and Mr. Gomez's Statements

11       Plaintiff contends that the ALJ erred by failing to credit her mother and boyfriend's

12  testimony.  ECF No. 15 at 8-11.  Lay testimony as to a claimant's symptoms is competent

13  evidence that an ALJ must take into account, unless he expressly determines to disregard such

14  testimony and gives reasons germane to each witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503,

15  511 (9th Cir. 2001).  An ALJ must consider this testimony in determining whether a claimant can

16  work.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20

17  C.F.R. § 416.913(d)(4); *Smolen*, 80 F.3d at 1288.  However, in doing so the ALJ is free to

18  evaluate that testimony and determine the appropriate weight it should be given in the light of the

19  other evidence.  To discount the testimony of a lay witness, the ALJ must "give reasons that are

20  germane to each witness."  *Id.* at 1053; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574

21  F.3d 685, 694 (9th Cir. 2009).

22       Plaintiff's mother, Mary Hill, testified that plaintiff get migraines that make her unable to

23  function.  AR 80.  Ms. Hill testified that because of them, she had to drive plaintiff to school.  *Id.*

24  She also testified that plaintiff did not have any friends.  *Id.* at 87.  Further, she testified that the

25  side effects from plaintiff's prescriptions were debilitating.  *Id.* at 90-91.  In a written statement,

26  Mr. Gomez, plaintiff's former boyfriend, wrote that plaintiff did not handle stress or changes to

27  routine well.  *Id.* at 269.  He also noted that plaintiff was not good at handling spoken

28  instructions.  *Id.* at 268.

In her decision, the ALJ stated that she "considered the corroborating statement by Mr. Gomez (her former boyfriend) and the claimant's mother, and accords the same level of credibility given the claimant's statements. AR 36. Ms. Hill and Mr. Gomez's statement simply substantiated plaintiff's subjective complaints, which the ALJ discredited. As the ALJ provided sufficient reasons for rejecting plaintiff's testimony, and Ms. Hill and Mr. Gomez's statements corroborated plaintiff's subjective complaints, the ALJ properly discounted these statements. *See Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [plaintiff's] own subjective complaints, and because [lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

E. Remaining Arguments

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 15 at 15. This argument, however, is premised on plaintiff's contention that the ALJ failed to consider her headaches and anxiety disorder in assessing her ability to work. *Id*. As previously discussed, the ALJ permissibly found that plaintiff's headaches were not severe and properly considered the medical evidence concerning plaintiff's anxiety impairments in assessing her RFC. Accordingly, plaintiff's argument is without merit.

Plaintiff similarly argues that the ALJ erred by failing to pose a hypothetical to the ALJ that included all of her impairments. *Id*. at 15-16. Specifically, plaintiff argues that hypothetical posed to the VE did not include limitations assessed by Dr. Aquino-Cruz and described by plaintiff, Mary Hill, and Mr. Gomez. *Id*. at 16. As the ALJ properly considered and rejected Dr. Aquino-Cruz's opinion and plaintiff's testimony, as well as statements made by Ms. Hill and Mr. Gomez, the ALJ was not required to pose a hypothetical that included limitations supported by this evidence.

IV.   CONCLUSION

The ALJ applied the proper legal standard and his decision was supported by substantial evidence. Therefore, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

13

2.  The Commissioner's cross-motion for summary judgment is granted; and

3.  The Clerk is directed to enter judgment in the Commissioner's favor.

DATED:  September 30, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE